Good morning, ladies and gentlemen. Our first case for argument this morning is Thurston v. Vanihel. Ms. Bott. May it please the court. I am Maggie Bott and I represent Ricky Thurston in this section 2254 appeal. I will be happy to answer the court's questions about our arguments under D1 and about Strickland performance, but I would like to begin by explaining why Thurston 2 fails AEDPA analysis under D2. Thurston 2 was based on an unreasonable determination of the facts. The clear and convincing weight of the evidence, in fact, all of the evidence in the record shows that the jury would have known case 889 was another criminal sex case involving Mr. Thurston. There was nothing vague about it. The jury would have known case 889 was a criminal case in Indianapolis. In her testimony on page 253 of the trial transcript, DNA analyst Shelly Crispin explained in detail how to interpret an Indianapolis Police Department case number. Ms. Bott, I'm worried about whether your argument is consistent with the approach taken in Strickland against Washington. The nature of your argument is the lawyer made one mistake, therefore the lawyer rendered ineffective assistance. The Supreme Court in Strickland expressly rejected that approach. It said that it is necessary to consider counsel's total performance and not just whether one error was made. But I don't see any effort in your brief to consider the totality of counsel's performance. Yes, typically with Strickland analysis you consider all of the lawyer's performance during trial. But under Harrington v. Richter, a single error during trial can create great enough prejudice to constitute deficient performance under Strickland. So let me be sure I understand your answer. You are conceding that overall counsel provided effective assistance. You're arguing for an exception under which one howler of an error might justify relief. That that's the nature of your argument. Yes, one single error was great enough. No, not just one error. One error that just completely sabotages the trial. Yes. And of course you're here making that argument in the face of a finding that there was no effect at all. Yes, we contend that the one single error allowing in 404B evidence of a prior criminal act is big enough, is prejudicial enough to constitute ineffective assistance of counsel. And we know that the jury would have known that case 889 was another criminal sex case because the DNA match was to a sperm fraction. The jury almost certainly would have known it was another criminal sex case because of the sperm fraction. If this additional case had been admitted directly for whatever it was worth, would there have been a constitutional problem? So far as I know, in federal court under rule of evidence 413A, this would have been admissible evidence. Doesn't that make it hard to call this a constitutional howler? Well, in Indiana, under Indiana Supreme Court law, this 404B evidence of prior criminal activity is presumably prejudicial. It sounds like we're being asked to enforce Indiana law. Well, this is an Indiana case where Mr. Fisher, Mr. Thurston's trial counsel, had a defense strategy. He executed that defense strategy ineffectively. He filed motions in limine. He worked hard to redact any sort of evidence of prior bad acts under 404B, and those motions in limine were granted because that is the law in Indiana. However, he made one grave error. He missed the reference to case 889 on exhibit 16, and he failed to object, and that was deficient performance under Strickland and highly prejudicial, and it sabotaged this entire case. Can I ask you a question on the spot about, I think I'm with you on the gravity of the error. It's pretty serious in a case like this, but how do you deal with the Indiana Court of Appeals reasoning through the prism of the 2254D standard and what we know about it from the Supreme Court's guidance in Harrington, given the instructions that were given to the jury here and the fact that this reference to case 889 really never came up beyond the question the jurors asked. It's not the subject of closing arguments. The state's not leaning on it at all in any way. So you have this reference. I don't know if they use this word. They may have it. It's kind of vague. It's really not developed. What's your response to that through the prism of the deference that we're required to afford that Indiana judgment? Right. Thurston, too, came to the conclusion that the reference to case 889 was vague. However, there was nothing vague about it. As I mentioned, the jury would have noticed it was an Indianapolis police case number, and they would have known that it was another criminal sex case involving Mr. Thurston. The two jury members asked questions specifically about case 889. One of them asked specifically about the sperm. When you say they would have known or it would have been a plausible inference? It would have been the only reasonable inference for the jury to draw. To come to any other conclusion, it would have been speculation. And Thurston, too, noted that the jury was specifically instructed not to speculate. Can I ask you a factual question that has troubled me? I have a question for your adversaries on the other side. You argue in your blue brief that the defendant, he never admitted to having sex with TK that way. But instead, his position at trial was that whatever happened was consensual. Right. Okay. That position that you advance seems contradicted to me by James Fisher's affidavit in the case and by the defendant's own filing in district court. And here's what I mean by that. Fisher, in his affidavit, comes right out and says that we acknowledged that there was consensual sex. Okay. I'm looking at paragraph 14 of his affidavit. And then the defendant, Thurston himself, said, quote, I argued there was a consent defense admitting sexual intercourse with TK. This seems odd to me. Right. Because I actually think your reading of the trial record may be correct. But it's very odd for a defendant to say I admitted to consensual sexual intercourse when, in fact, he may not have, and it's not in his interest to acknowledge that. So what happened here? Right. Well, we can't explain the discrepancies, but we do know from the trial on page 422 and 423 of the trial transcript in Mr. Fisher's closing that the defense was not consent to sex. The defense was Why would defense counsel say it was in a sworn affidavit? I can't answer that, but I think what's relevant here is what the jury heard. The jury heard that the defense was consent to whatever happened that night. So briefly touching on our D1 argument, Thurston 2's prejudice analysis at least unreasonably applies to Tripland and fails ADP review. When a court misstates and therefore misunderstands the defense, as Thurston 2 does, its Strickland analysis is almost necessarily going to be unreasonable. It cannot reasonably assess the probability of a different outcome. As mentioned, the Court of Appeals understood Mr. Thurston's defense as consent to sex. In light of this misunderstanding, Thurston 2 found it incriminating that Mr. Thurston could not recognize TK, a woman who he had consensual sex with. However, during trial, Mr. Thurston never claimed to have had consensual sex with TK. His defense was whatever happened that night, happened that night. TK got into the car with Mr. Thurston. TK drank beer with Mr. Thurston. TK smoked cigarettes with Mr. Thurston. There was no evidence of sex. There was no forensic evidence. The only evidence that there was... Well, hold on. The victim testified. The only evidence that there was was the victim saying that rape happened, that any sort of sex happened. Well, Ms. Bott, in a rape case, quite often that's the only witness you have. That is true. But the argument here is this was a case about credibility. Yes. I know you say that. Well, what about that? Do we have the issue of her credibility? Isn't she right about the spoiled tampon? So that does go to her credibility, but that's why the reference to Case 889 and the reference to the sperm fraction was so damaging to Mr. Thurston. That evidence should have never been admitted into evidence, and it was, and it highly prejudiced Mr. Thurston. And if there's no further questions, I will save the rest of my time for rebuttal. Certainly, Counsel. Ms. Templer. Yes. Thank you, and may it please the Court. This Court should affirm the District Court because the State Court reasonably applied Strickland and in so doing reasonably determined the facts. First, I'd like to address Judge Scudder's question about the State Court's interpretation of Mr. Thurston's defense. It is in the affidavit Counsel did say the defense was consent, and at trial he repeatedly said to tell the truth about what happened would have ruined T.K.'s marriage. And I think Counsel's affidavit saying that his defense was consent informs what he means when he says telling the truth would have ruined her marriage, and that what would have ruined her marriage would have been telling her husband that she had consensual sex with a stranger. And so I think those two statements, the defense could have, that would have ruined her marriage, and that the defense was sex can be read, consensual sex, excuse me, can be read harmoniously together. And so the State Court's interpretation of what Mr. Thurston's defense was is in line with what he said and what happened at trial. So is that to say that Mr. Fisher, Mr. Fisher's position was that what I said was tantamount to an admission of consensual sex? Yes, Your Honor. Yeah, so I don't know. I mean, it's frustrating in a case like this where the stakes are so high for Mr. Thurston that we can't even figure out what, I can't figure out for sure what even happened at trial on this point. Your brief on page 18, you say at the top of the page, at trial, counsel argued that Thurston and TK had engaged in consensual sex. Okay, I can't find that argument. All right, ten lines later in the brief, you say he, meaning counsel, pointed out that the physical evidence did not prove they had sexual intercourse, let alone that she was raped. It seems directly at odds with itself. What do you think was argued at trial? What I think was argued at trial is counsel argued that TK was lying, and that she lied about the nature of her encounter with Mr. Thurston because she was concerned telling the truth would ruin her marriage. Right, she was gone for seven hours from home. Her husband would have said, where have you been? She needed a story. Right. That was the argument. Yes. Okay, well that's different than saying, hey, I want to make something very clear here. They had consensual sex. The reason I'm focused on this is from a defendant's perspective in a case like this, the moment that he acknowledges he had consensual sex, it's right into Judge Flom's question. Then it's all about, do you believe the victim? Do you believe TK? Right. His defense is stronger if he's able to say, heck no, I'm not acknowledging that. They never had sex at all. And I think perhaps what… It's very hard for me to get to the 2254D analysis when I'm not even sure from the presentation that I know what happened. And I understand Your Honor's concern because they do seem to be in conflict. But I don't think that they're opposites. And I think that it was reasonable for the state court to look at the affidavit that counsel had submitted to the post-conviction court and to look at the closing arguments and try to read what counsel did do and what counsel said he was trying to do together. And I think a way to do that is to say what would have ruined TK's marriage would have been telling her husband that she had been alone with this guy for seven hours because it implied, regardless of whether she explicitly said it or not, that they had sex. And I think part of what perhaps counsel was doing at trial was hedging a little bit, especially after the evidence came in and the forensic evidence didn't confirm his DNA on any of the samples that were taken from TK. The state court's total prejudice analysis was also reasonable because it considered the vagueness of the reference, the trial court's instructions to the jury that they were not to speculate, that they were to convict Mr. Thurston only upon the evidence that was presented to them and the evidence, the state's case that was actually presented to them. Here, in addition to TK's explicit testimony that Mr. Thurston drew a gun, pointed it at her head, and forced her to have sex with him, there was corroborating evidence that, for example, a soil tampon was found where she said it was. Mr. Thurston's DNA was found at the park, even though in his statement to police he denied ever being in that park. There's also physical evidence in the nature of the injuries that she sustained and were found during her sexual assault exam were consistent with climbing over a fence, as she said she did to escape Mr. Thurston. It was also clear that TK's description of Thurston matched him and that he had access to a silver Thunderbird, which was the car that he used to pick her up and where he later raped her. The state court also reasonably determined as a legal conclusion that the reference to 889 was vague. Here, all that it says is that his DNA was found in another case number, and while that case number may match an Indianapolis police report, that doesn't mean that the only reasonable conclusion to draw is that Mr. Thurston must have been the perpetrator. There are any number of ways that the district court recognized that Mr. Thurston's DNA could have been found. He could have, in fact, been excluded as a perpetrator. Because the state court reasonably applied strictly and reasonably determined the facts, we would ask that this court affirm the district court. Ms. Templeton? Yes. Would you agree that if the jury thought it referenced another rape by this defendant, that that would be the tipping point in a case like this? No, Your Honor, I don't. And this court in Harding v. Stearns found that an explicit reference from defense counsel that the petitioner had been convicted of a prior armed robbery in an armed robbery case was not prejudiced because of the jury instructions and limiting instructions that were given and other evidence that was presented. And the same is true here. Even if this was a more explicit reference that Thurston had committed another rape, it does not necessarily mean that he was prejudiced. If there are no further questions, thank you. Thank you, counsel. Anything further, Ms. Vaught? Yes. First, I'd like to go back to... Ms. Vaught, you can be heard better with no mask. Oh, I apologize. I just have it. I first would like to go back to Mr. Fisher's affidavit, specifically paragraph 14. It says, Thurston's defense was consent. I understand this could be read as consent to sex, but it is exactly what it says. It's consent. Whatever happened that night was consensual, not consent to sex. That was never the defense. And there are... Hold on, hold on, hold on. You've got to go a few lines down. Before engaging in consensual sex, they were smoking, listening to music, etc. Right, but I think... It seems like he's saying that the defense was consensual sex. Right, I think we can't explain the inconsistencies, but with this, Thurston's defense was consent, and also the trial transcript in mind, the defense was consent to whatever happened that night. And additionally, there are a lot of discrepancies in the state's case that Thurston, too, did not address. One, T.K. could not recognize Mr. Thurston. The Court of Appeals in Thurston, too, gave a lot of incriminating weight to the fact that Thurston could not recognize T.K. But the Court of Appeals failed to consider that T.K. could also not recognize Mr. Thurston. And another inconsistency that I want to highlight is that within hours of reporting the alleged rape, T.K. could not find Mr. DePlante's house. Mr. DePlante was Mr. Thurston's boss, and where Mr. Thurston had been living at the time of this situation. T.K. visited Mr. DePlante's house when she was with Thurston that night. They stopped by to grab some more beers. Mr. DePlante's house was on Wallace Street. T.K. also lives on Wallace Street. T.K. and Mr. Thurston never left the neighborhood. They stayed in a small area. That park that they went to, more like the alleyway that they parked in next to the park, was just a two-minute drive from Mr. DePlante's house. So mere hours after the alleged rape, T.K. could not identify even the street that Mr. DePlante lived on. Although in 2012, when the trial actually happened, she remembered in detail that when Thurston drove by her when she was only wearing socks walking home around midnight, Mr. Thurston drove past her on 21st Street, turned around on Wallace Street, which she called her own street, and drove up and offered her a ride. She remembered that in 2012 at the trial. But mere hours after the alleged rape, she could not say where Mr. DePlante lived, not even the street that she shared with him. A lot of these arguments were points that Mr. Fisher made in his closing argument, weren't they? That her account is not credible in his view. That's exactly right. But the problem is that Thurston, too, does not consider all of the evidence as required by Wong v. Belmontes. They give great deference and consideration to the state's arguments, but they fail to consider the arguments of Mr. Thurston. They fail to consider both the good and the bad facts in the record. And this court must focus on the particular reasons, both legal and factual, that the state court has for rejecting a federal claim. We can't suppose what the state courts might have considered. So, in closing, this case isn't a close call. There was nothing vague about the sperm fraction reference in Exhibit 16 to the other case number, 889. But for Mr. Thurston's trial's attorney's error in failing to notice and object to the reference to case 889 in Exhibit 16, there is a reasonable probability of a different outcome. We had two jurors that asked questions about case 889. We only need one juror to vote not guilty. So, for the foregoing reasons, Mr. Thurston respectfully requests that the court reverse the judgment of the district court. Thank you, counsel. And Ms. Bob, the court appreciates your willingness and that of the law school to accept the appointment in this case, and your assistance to the court as well as your client. The case is taken under advisement.